FILED & ENTERED

MAR 05 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Real Estate Short Sales Inc<br><br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:  1:16-bk-11387-GM<br>Adv No:   1:19-ap-01139-GM<br><br>**TENTATIVE RULING ON MOTION TO DISMISS** |
| Haya Sara Yavor<br><br>Plaintiff(s),<br><br>v.<br><br>City One Locksmith<br><br><br>Defendant(s). | Date:        March 3, 2020<br>Time:        10:00 AM<br>Courtroom:  303 |

    At the hearing on January 14, I discussed the tentative ruling.  The issues of
indemnification and privity as well as dismissal of an unnamed Doe defendant were
reviewed and I determined that the tentative ruling was correct as to those.  However,
the question of whether the Buyer has standing to sue the locksmith for negligence
committed while the Trustee was the owner of the property was left open.  The Trustee

had cited the case of *Krusi v. S.J. Amoroso Constr. Co.* 81 Cal. App. 4th 995, 1003 (2000) in the reply.  The Plaintiff was given until February 3 to file a brief on that single issue.  The Trustee had until February 10 to file a reply brief.  The motion to dismiss was continued to March 3, 2020 at 10:00 a.m.

Plaintiff's Brief

Plaintiff analyzed both *Krusi* and *Keru Investments, Inc. v. Cube Co.,* 63 Cal. App. 4th 1412 (1998), which is cited by *Krusi*.  In *Krusi*, the property was built in 1985 and the original owner had a dispute with the architect.  This went to arbitration in 1988 and the arbitrator ruled in favor of the architect on the defective work claims.  In 1995 the buyers purchased the property.   Prior to the sale closing, the seller became aware of leaks and repaired them as well as other defects.  When the buyers sued the seller, the court affirmed the dismissal due to the prior arbitration and the longstanding existence of the defects.

In *Keru*, Moross Group, the owner of the property, hired GL & Assoc. to do a seismic retrofit.  The 1994 Northridge earthquake damaged the property.  Later in 1994, the Moross Group conveyed the property to Keru Investments, who sued the sellers, the retrofitters and others.  The court determined that the buyer did not own the cause of action simply because they discovered the reason for the damage after the property was transferred to them.  But it also noted that in other situations a subsequent purchaser would be a foreseeable plaintiff.  For example in *Sumitomo Bank v. Taurus Developers, Inc.*, 185 Cal. App. 3d 211 (1986), the court found that a purchaser at a trustee's sale could state a negligence claim against a builder.  See also *Huang v. Garner* 157 Cal.App.3d 404, 423 (1984) which held that a developer's duty of reasonable care is logically owed to those who are subsequent buyers of a structure allegedly designed or constructed in a defective manner.

In the present case, the reason that City One Locksmith did the work was so that Yavor would purchase the property.  This was necessary to complete the transfer.  The

1  damage was not present at the time of the purchase agreement or when the court

2  approved the sale.

3     Citing to *Connor v. Great Western Sav. & Loan Assn*, 69 Cal.2d 850, 865 (1968),

4  Yavor sets forth the public policy of balancing certain factors to determine whether a

5  defendant will be held liable to a third person not in privity: "[1] the extent to which the

6  transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3]

7  the degree of certainty that the plaintiff suffered injury, [4] the closeness of the

8  connection between the defendant's conduct and the injury suffered, [5] the moral

9  blame attached to the defendant's conduct, and [6] the policy of preventing future

10  harm."

11     Yavor contends that at trial she will be able to prove that City One chose to

12  damage multiple French Doors instead of just changing the locks on them.  Because of

13  this, she received the property in a worse condition than it was at the time of the

14  purchase agreement.

15

16                                     Trustee's Brief

17     The Locksmith is a tradesman, not a developer, builder, engineer, or housing

18  planner and as a matter of public policy it would be unfair to hold him to a foreseeability

19  standard exposing him to unlimited liability towards subsequent purchasers of the

20  property. Because he owed no duty to Yavor, the complaint must fail.

21     Under *Krusi*, "a cause of action for damage to real property accrues when the

22  defendant's act causes 'immediate and permanent injury' to the property or, to put it

23  another way, when there is '[a]ctual and appreciable harm' to the property." 81

24  Cal.App.4[th] at 1005.  Because the negligence cause of action accrued before the sale

25  closed, it belongs to the Trustee, not to the Buyer.

26     *Keru* actually holds the same: "Choses in action belong to the party who suffered

27  the injury. In this case the injury was suffered by Keru Investments' predecessor, the

28  Moross Group. In the absence of assignment, Keru Investments does not have standing

to pursue it." 63 Cal.App.4th at 1423-25.  In fact, *Keru* explains that builders and developers are treated differently because they are constructing projects for resale. Therefore they are held closer to a products liability standard. *Huang* and *Sumitomo* both deal with negligence claims against a builder or developer.  They do not apply to a single contract employee like a locksmith.

Looking at the *Connor* tests (also cited in *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958)), factors 1, 2, 5 and 6 weigh heavily against finding that the locksmith is liable to the Buyer.  The transaction between the Trustee and City One was to protect the property pending the closing of the sale and to prevent the prior owners from entering. This was for the benefit of creditors, not only because of the Buyer.  And thus the hiring of the locksmith would have occurred whether or not the property was in escrow.

City One was hired for a singular purpose – to secure the property.  The locksmith worked under the narrow instruction of the owner (the Trustee).  The relationship of the locksmith and the Buyer is too attenuated to impose a duty from the locksmith to the Buyer.  Public policy would not be served by imposition on such tradesmen absent privity of contract.

<u>Case Analysis</u>

It should be noted that all of the real property construction cases placed before this court are at the court of appeal level and are not definitive California law.  Thus none is a binding determination of California law on the issue before this court.  Under this situation, it is usual that the latest decision will be followed unless it is deemed erroneous. Cal. Jur 3d, Courts, §302.  However, "where there is more than one appellate court decision, and such appellate decisions are in conflict … the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions."  *Auto Equity Sales, Inc. v. Superior Court*, 57 Cal.2d 450, 456 (1962).

These cases are very fact specific.  Reviewing them in chronological order, they can be summarized as follows:

1

2    _Huang v. Garner_ 157 Cal.App.3d 404 (1984): The Caroline Apartments was

3    constructed in 1965. Apparently the plans and specifications were defective and in

4    violation of the building code. The owner-builder owned the property until 1970 and then

5    sold it to the Bartels, who sold it to the Huangs in 1974.  The Huangs wanted to convert

6    the building to condominiums and hired an engineer who discovered the defective

7    construction issues. The Huangs sued a whole variety of defendants and most settled.

8    But the original owner-builder went to trial.

9        The Court held that the the professional designer and engineer, etc. could be

10   liable for the damage because the building code and the issue of professional

11   negligence are meant to protect those who are hurt by the actions of the professional.

12   As to the claims against the original owner-builder, the Court held that the developer

13   has a duty of reasonable care that is owed to subsequent purchasers, even if those

14   subsequent purchasers do not live in the building but purchase it solely as an

15   investment.  There is a foreseeability factor that the owner-builder had that it would sell

16   the property at a future date and that the purchasers and subsequent residents would

17   be damaged by the defects.  As to the owner-builder, "we conclude that the risk of harm

18   in this case was foreseeable and that injury to plaintiffs' economic interests may legally

19   be compensated if plaintiffs prevail in their cause of action for negligence." Id. at 425

20

21   _Sumitomo Bank v. Taurus Developers, Inc._, 185 Cal. App. 3d 211 (1986): The

22   plaintiff was the bank which made the construction loan to the defendant builder.  After

23   default the bank gained title to the property at the trustee's sale.  It then sued the

24   developer for a variety of claims after discovering latent defects in the property. [The

25   claims for fraud in the loan transaction are not discussed here due to lack of relevance.]

26   As to the claims for negligence, just because this was a foreclosure sale, the lender-

27   buyer was not barred from seeking to recover damages for negligence.  And the "as is"

28   provision in the trustee's deed on sale did not bar a negligence claim.  There is a duty to

construct properly and the eventual sale of the property is foreseeable. Citing to *Biakanja v. Irving*, the Court set forth the general rule of reasonable care towards the purchaser of a housing structure and notes that this has been applied even to a subcontractor.  And it applies to a builder who is not the seller.  And an "as is" clause does not affect liability based on breach of a duty of care.

*Vaughn v. Dame Construction Co*. (1990) 223 Cal.App.3d 144 (1990): The plaintiff was the owner of a condominium and during that time she had construction work done by the defendant.  She filed suit for damages due to defective construction and while the suit was pending, she sold the condominium to a third party. The issue on this motion for summary judgment was whether the plaintiff continued to have standing to sue even though she no longer owned the property.  The Court found that it was undisputed as to the plaintiff's ownership at the time of the negligence and that she suffered damages due to it.  It held that the plaintiff was the real party in interest and thus owned the cause of action.  However, the Court goes on to hold that "[w]hile ordinarily the owner of the real property is the party entitled to recover for injury to the property, the essential element of the cause of action is injury to one's interests in the property—ownership of the property is not. It has been recognized in many instances that one who is not the owner of the property nonetheless may be the real party in interest if that person's interests in the property are injured or damaged." Id. at 148.

The cause of action is not real property, but personal property and can be transferred.  But the transfer of the real property does not automatically transfer the related personal property.  When the owner conveyed the condominium, she did not automatically transfer the personal property cause of action.

No one other than plaintiff can recover for the damages she sustained as owner of the property at the time the injury occurred. The fact that the property was sold after the damage occurred does not mean the new owners are now the parties entitled to recover for the damage suffered by plaintiff while she was the owner.

In order for the new owners to maintain an action, they would first have to
establish damage to their interests in the property. If, as plaintiff's counsel
represents, the new owners bought the property with full knowledge of the
defective construction and presumably paid no more than the fair market value of
the property in its defective condition, there is little likelihood that the new owners
would or could assert the same claim as plaintiff.  Id. at 149.

The *Vaughn* court discounted the case of *Kriegler v. Eichler Homes, Inc*, 269
Cal.App.2d 224 (1969) in which the faulty construction took place in 1951, the property
was sold to the original buyers in 1952 and the plaintiffs did not purchase it until 1957.
The court allowed the plaintiffs to sue the builder, who cross-complained against the
suppliers of the faulty heating system.  Because of the strict liability doctrine, the plaintiff
could proceed to prove that he was injured by the faulty construction, which, apparently,
only became obvious after the plaintiff had bought the home.

*Keru Investments, Inc. v. Cube Co.,* 63 Cal. App. 4th 1412 (1998): Viljo Kaila
owned the 35 unit apartment building in Hollywood and sold it to the Morosses, et. al
(Moross Group) in 1985, taking back a deed of trust. In 1988 the Moross Group hired
GL & Associates to engineer a seismic retrofit of the building and the Cube Company
was hired to perform the work. In January 1994 the building was severely damaged by
the Northridge earthquake.  In October 1994 Keru Investments, a company wholly
owned by Kaila, bought the property subject to the first deed of trust, relieving the
Moross Group from their obligations under the note.

Reviewing the prior cases (cited above), *Keru* makes a distinction as to the type
of defendant, noting the *Huang* and *Sumitomo* both concerned defendants who were
builder/developers who had constructed the projects for purposes of resale.  Thus they
were similar to manufacturers who placed dangerously defective products into the
stream of commerce.  Here the defendant "was not a developer and had not retrofitted

1    the building with the expectation that it would be transferred by the Moross Group to a

2    third party." Id. at 1423

3        The work was done for the prior owner and the damage was sustained during the

4    ownership of the prior owner.  The cause of action accrued when Moross Group was

5    entitled to prosecute it.  This was prior to the ownership of Keru.  Citing to the *Vaughn*

6    case, the Court held that it was Moross Group who held the cause of action for

7    negligent construction and not Keru, who was a transferee of the property.  This was

8    personal property of the Moross Group and did not transfer to Keru with the land.

9        The injury was sustained by the Moross Group which owned the property when

10       the earthquake devastated the building. Respondents cannot claim to own the

11       cause of action simply because they discovered the reason for the damage after

12       the building was transferred. Under respondents' reasoning, every party who

13       purchased a hulk of a building would automatically have a right to bring a lawsuit

14       if they could find some previously unknown factor which contributed to the

15       building's destruction. That is simply not the law. Choses in action belong to the

16       party who suffered the injury. In this case the injury was suffered by Keru

17       Investments' predecessor, the Moross Group. In the absence of assignment,

18       Keru Investments does not have standing to pursue it. Id at 1424-5

19

20       *Krusi v. S.J. Amoroso Constr. Co.* 81 Cal. App. 4th 995 (2000): The most recent

21   case is that of *Krusi*, which tried to find a path between the prior conflicting decisions.  In

22   *Krusi*, a commercial building was constructed 8 years earlier and the current owners

23   were the fourth owners.  They sued the architects and contractors for negligence due to

24   water leaks in the garage headwall.  The original owner had sued the architect for this

25   issue, but the arbitrator favored the architect.  The seller to the current owner knew of

26   the leaks and expected to reduce the sale price by $15,000 for the cost of repair.  The

27   new owner discovered substantial damage due to the leaks and the construction.  They

28   lost on summary judgment for lack of standing.

The *Krusi* opinion reviews the prior case holdings (*Huang, Sumitomo Bank v. Taurus Developers, Keru. Vaughn*).  The *Krusi* court notes that the prior cases split: two for liability to a subsequent owner, two against liability.  The *Krusi* court harmonized the four opinions and then decided that this case should follow the *Keru* holding, but not on the same reasoning.

The first distinction make by *Keru* is the purpose of the owner-defendant.  Were they builders/developers who intended to resell the property at issue or was the defendant a mere contractor who had no such intention.  *Krusi* was not impressed with this in this day and age. In the prior cases, three of the properties were multifamily projects (2 apartment buildings and one condominium complex).  In *Vaughn* it was a single condominium unit. *Krusi* concerns an office building.  Also, *Krusi* is concerned that the decision might rest on the nature of the defendant.  So it does not follow this first distinction.

But *Krusi* does embrace the concept that accrual of a cause of action for damage to real property occurs when "the defendant's act causes '*immediate* and *permanent* injury' to the property or, to put it another way, when there is '[a]ctual and appreciable harm' to the property." *Krusi*, 81 Cal.App.4th at 1005 (Citing *CAMSI IV v. Hunter Technology Corp.,* 230 Cal.App.3d 1525, 1534 (1991)).  The cause of action is not transferred to a subsequent owner unless the current owner clearly manifests the intent to transfer it.

*Krusi* then goes on to discuss the *Biakanja* case [discussed below] dealing with privity:

> It is, of course, clear that a tort duty runs from an architect, designer, or contractor to not only the original owner for whom real property improvement services are provided, but also to subsequent owners of the same property. We made this point in Huang and, as we noted there, it is a basic rule deriving from the seminal case of *Biakanja v. Irving, supra*, 49 Cal.2d 647. There, our unanimous Supreme Court, through Chief Justice Gibson, held that an action in

negligence may be maintained against one not in privity with the plaintiff if, inter

alia, the transaction was designed to affect the plaintiff, the injury to the plaintiff

was foreseeable and his or her harm certain, and there was a close connection

between the defendant's conduct and the harm which occurred. (*Id*. at p. 650,

320 P.2d 16.)

But, as applied to a case such as this, the *Biakanja* rule simply means that

a duty may run from an architect, engineer or contractor to a subsequent owner

of real property. It does not mean that, in a case implicating damage to such

property, once a cause of action in favor of a prior owner accrues, another cause

of action against the same defendant or defendants can accrue to a subsequent

property owner—unless, of course, the damage suffered by that subsequent

owner is fundamentally different from the earlier type. Thus, if owner number one

has an obviously leaky roof and suffers damage to its building on account

thereof, a cause of action accrues to it against the defendant or defendants

whose deficient design or construction work caused the defect. But, if that

condition goes essentially unremedied over a period of years, owners two and

three of the same building have no such right of action against those defendants,

unless such was explicitly (and properly) transferred to them by owner number

one. But owners two and three could well have a cause of action against those

same defendants for, e.g., damage caused by an earthquake if it could be shown

that inadequate seismic safeguards were designed and constructed into the

building. Such is, patently, a new and different cause of action.

*Krusi*, 81 Cal.App.4th at 1005-6.

*Krusi* then applies this to the facts before it and finds that although the issue of

when damage occurs is a question of fact, because there was a prior litigation against

the architect, this is now undisputed and because of that it affirmed the grant of

summary judgment against the new owner.

<u>Application of the Caselaw to the Yavor v. Zamora situation</u>

Following the general procedure in dealing with conflicting appellate decisions, the Court finds that *Krusi* has analyzed the prior cases and that its decision is not clearly erroneous given the facts before the *Krusi* court. The summary and analysis of *Krusi* is very helpful … to a point.  However, the facts before this court are quite different from those of *Krusi*.

The work done by City One was during the ownership of the Trustee, but for the direct benefit of the Buyer. And this was not an unknown buyer, but was for a property in escrow at that time.  The price had been set, the buyer was only awaiting the ability of the Trustee to evict the prior owners and close.  [The Court is aware that the parties reduced the price to cover some damages to the property, but whether this prevents the Buyer from proceeding is a matter of fact to be determined at a later stage in the litigation.]

This is not a situation where the damage was done at a time when the owner had hopes of sale or did not know the identity of some future purchaser.  The Trustee was working for the benefit of the estate and Yavor was the person who would provide that benefit.  To that extent, Yavor was as close to being in privity as one can be while not actually being in privity.  It seems to the Court that the concept set forward in *Biakanja* is the most relevant to this case.

*Biakanja v. Irving*, 49 Cal.2d 647 (1958) involved the negligent preparation of a will by a notary public.  Because he failed to create a document that was legally valid, the decedent was deemed to die intestate and his brother, who was intended as the sole beneficiary, sued the notary public for negligence.  The court held that even through the plaintiff and the notary were not in privity, the brother could sue:

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of

certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. Cf. Prosser, Torts (2d ed. 1955), ss 36, 88, 107, pp. 168, 172, 544-545, 747; 2 Harper and James, Torts (1956), s 18.6, p. 1052. Here, the 'end and aim' of the transaction was to provide for the passing of Maroevich's estate to plaintiff. See *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425. Defendant must have been aware from the terms of the will itself that, if faulty solemnization caused the will to be invalid, plaintiff would suffer the very loss which occurred. As Maroevich died without revoking his will, plaintiff, but for defendant's negligence, would have received all of the Maroevich estate, and the fact that she received only one-eight [sic] of the estate was directly caused by defendant's conduct.

*Biakanja*, 49 Ca.2d at 650-1

Ten years after *Biakanja*, the California Supreme Court again adopted the *Biakanja* test in *Connor v. Great Western Sav. & Loan Ass'n*, 60 Cal.2d 850, 865 (1968), this time dealing with real estate construction. In that case, the entity that financed the real estate development had a duty to the ultimate buyers and was held liable to the buyers for damages due to the construction defects created by the contractor.

There is no hard and fast rule that applies to this case. The Court has to balance the factors including those enumerated in *Biakanja*. The work on changing the locks was for the benefit of both the Trustee (to protect property of the estate) and the Buyer (to receive property that was not damaged by an intruder). It was foreseeable by City One that if it damaged the doors, this would harm either the Trustee or the ultimate owner or both (depending on who would undertake the repair or replacement needed). Damage to the doors certainly injured the Buyer, though the amount of injury is yet to be determined. The alleged injury is directly due to the actions of City One. There is no

moral blame.  While the Court has no indication as to whether City One actually was negligent, if they were, the fact that they are found to have acted improperly could prevent future harm to others. Beyond that, this is not a situation when the Buyer was new to the property, had time to inspect before making an offer, and that offer then included knowledge of the alleged damage.  Under such circumstances, the Court might find that public policy would prevent the Buyer from pursuing this cause of action against the locksmith.  But this is not the factual situation here.

The Court needs to discuss other factors and that deal with the bankruptcy process.  One is that it was obvious to City One that the Trustee was not the ultimate owner of the property, but was in the process of selling it in the very near future.  This might equally apply to a situation where the person hiring the locksmith or other workman is the owner (or the real estate agent) of a property that has a "for sale sign" on it.  It is a question of fact as to whether or not City One was aware of the nature of a bankruptcy and that the property would soon be transferred to a new owner.  And this is not something that the Court can resolve at the motion to dismiss stage.

As to the affect on trustees in future sales, it is doubtful that a locksmith or other craftsman would refuse the engagement because of potential liability to the ultimate buyer.  Even if a few such craftsmen decided not to engage in trustee work, there are many such persons available and this is not a unique set of skills held only be a few.

Deny the motion to dismiss.  An answer is due by March 17, 2020.  The status conference is continued to April 28, 2020 at 10:00 a.m..

Prior tentative ruling (1/14/20)

On October 8, 2019, Haya Sara Yavor (Yavor or Buyer or Plaintiff), who was the buyer of the real property at 10351 Oklahoma Ave., filed suit in state court against City

One Locksmith (City One), Case #: 19 STLC09304.  No activity has taken place in the case.

On December 2, 2019, Nancy Zamora (Trustee or Zamora), who is the chapter 7 trustee in the Real Estate Short Sales, Inc. (RESS) bankruptcy case, removed the case to the bankruptcy court.  The trustee asserts that this is a core matter and consents to final judgment in the bankruptcy court.

The complaint asserts that when the U.S. Marshal was employed to evict the prior owner, City One Locksmith was sent to change the locks to secure the property and to ensure that there would be no reentry.  Rather than change the locks to the front door, City One screwed the doors shut, which caused significant damage to the doors.  These were upscale luxury doors and very costly and valuable.  Plaintiff seeks general damages of at least $20,000, costs of suit, prejudgment interest, etc.

Although the complaint tries to avoid asserting a claim against the Trustee (referring to the U,S, Marshal in such a way that it appears that that person/entity hired City One, in paragraph 5 it states the true state of affairs: "In light of these sequence of events, Plaintiff Yavor brings this lawsuit to recover damages caused by Defendant Trustee's negligent actions."

The history of this action is as follows:

On April 19, 2019, Haya Sara Yavor filed a complaint in the state court against Nancy Zamora for negligence and fraudulent concealment (19STCV13803).  Included in that complaint was the assertion at paragraph 16 and 17 that "on December 17, 2018 … Defendant Trustee employed the U.S. Marshal to evict the Occupants from the Property.  In or around January of 2019, Defendant Trustee further proceeded to cause City One to screw the doors of the Property shut.  The screws on the door caused significant damage to the Property."

On May 30, 2019, the Trustee removed the complaint to this court as Adv. #1:19-ap-01064.  The Trustee then filed a motion to dismiss the complaint and on July 16,

2019  the Court granted that motion without prejudice.  The tentative ruling, which became the final ruling, is as follows:

The Plaintiff is the buyer who bought the home at 10351 Oklahoma Ave., Chatsworth from the estate of Real Estate Short Sales, Inc.  Nancy Zamora is the trustee of that estate.  The essence of the complaint is that in the process of evicting Cueva and Molica (the residents, who are also principals of RESS), the Trustee negligently hired a locksmith to screw the doors shut and that caused significant damage to the doors.

When Haya Yavor's agent inspected the property, the Trustee intentionally and fraudulently covered up the floor with tarp and personal property (heavy furniture) so that Haya Yavor would not discover that the floor was plagued with mold.  This inspection took place on or about September 2, 2018.  The damage was discovered only after Plaintiff took possession.

The estimate for repairs is $50,000.

The motion to dismiss is based on several grounds:

The Plaintiff cannot commence a lawsuit against a chapter 7 trustee in a nonbankruptcy forum without first obtaining leave of the bankruptcy court.  However, in the Ninth Circuit, the subsequent removal of this action to the bankruptcy court cures the initial jurisdictional defect.  Nonetheless, the Trustee argues that the Court should dismiss on this ground because the Trustee should not have to spend time and resources defending an action that the Court did not approve.

The Trustee has broad semi-judicial immunity from suit when she acts in her official capacity.  Even if her business judgment was unwise, she is not liable. *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 950 (9th Cir. 2002).

As to the claim of fraudulent concealment, while the Trustee is not absolutely immune, the complaint fails to include specific allegations sufficient to satisfy Rule 9.  In

fact, the Plaintiff's agent noticed the apparent defects in his inspection (complaint ¶ 18) and Plaintiff failed to inquire further before accepting possession.

As to the elements of fraud, there is no allegation that the Trustee ever personally visited the property or did so for a long enough period to move all of the heavy furniture, etc.  As to the assurances that the floor below the tarps was okay, there is no identity of who made them, when they were made, etc.  Also there was no duty to disclose.  Under the purchase agreement, the sale was As-Is, Where-Is and the Trustee made no investigation of nor makes any representation or warranty regarding the condition of the real property.  There was an inspection contingency in the purchase agreement.

Since the Complaint cannot be saved by any amendment, it should be dismissed with prejudice.


Opposition

Plaintiff intends to add City One Locksmith to the complaint.  *[Court: Please note that there are no "doe" defendants in federal court pleadings.  If you wish to add a defendant, you need to file an amended complaint.  See Fed.R.Bank.Proc. 7015, which incorporates Fed.R.Civ.Proc. 15.]*

The Trustee is not immune from grossly negligent acts, but is liable for these and also for intentional acts.

The facts of *Bennett v. Williams*, 892 F.2d 822 (9th Cir. 1989) are clearly differentiated from the facts in this case.  The hiring of, supervision of, and directions to the locksmith were grossly negligent.  This will be shown in discovery.  As to fraudulent concealment, the complaint adequately states facts that, if proven, would show liability.


Reply

The Trustee thinks that the opposition was not filed with the Court.  *[Court: It was not electronically filed, but was filed on 7/5/19.]*

The beliefs of the Plaintiff are not relevant – you need to look at the "facts" pleaded in the complaint.  The allegations are for simple negligence, not gross negligence.  There are not enough facts alleged to uphold a claim of gross negligence.

Because the Trustee has court authority to take over the property (by force, if necessary, through the use of the U.S. Marshals), the Trustee cannot be held responsible for the resulting damage (ie. if the Marshals had broken down the door).

As to fraudulent concealment, this was an as-is-where-is sale.  The Trustee made no representations of the condition of the Property and the Buyer acknowledged this.  Also the agent of the Buyer inspected, saw the tarp, and failed to look under it.  As to assurances to the Buyer that the floor had no issues, there are no facts alleged as required by Rule 9 (who said it, when, who was present, was the Trustee even in the house?).  Plaintiff has not alleged that the Trustee had a duty to disclose – and she did not because of the Purchase Agreement and Sale Order specifically removed any duty to disclose by the Trustee.

Proposed Ruling

Note my comment above as to the locksmith.

The Complaint must be amended.  As to negligence, there must be sufficient facts stated that the would support a finding that the Trustee acted in a grossly negligent fashion as to the damage to the doors.  Merely hiring a locksmith who may (or may not) have been negligent is not sufficient as to Cause of Action 1.

As to the fraudulent concealment cause of action, the Trustee is correct that FRBP 7009 (incorporating FRCP 9) and the cases that discuss it requires that fraud be pleaded with particularity.  This has not been done in this case.  The tarp may have covered damaged floors.  That is not the issue at this point (though it is relevant to damages).  The question here is liability.  What representations did the Trustee make?  What representations did her agent(s) make?  When were these representations made and to whom?  If the agent or Cueva/Molica made the representations, was the Trustee or her

agent present?  Were the representations reasonable?  Should the buyer have relied on them under the circumstances?

Grant the motion to dismiss with leave to amend.  The amended complaint is to be filed and served by July 30.  Any response is to be filed and served by August 16.  Opposition to the response by August 30 and Reply by September 13.  The status conference will be continued to September 24 at 10:00 a.m.

*I would like to hasten this and will shorten these dates if the parties agree to that.*

On August 6, 2019, Yavor filed a first amended complaint asserting that the Trustee had acted with gross negligence as to damage to the doors and mold damage. She did not name City One, but asserted that the Trustee breached her duty of care by "causing the doors to the Property to be negligently screwed shut, and in doing so, caused substantial damages to the doors of the Property." (paragraph 24).

On August 20, 2019, the Trustee filed a motion to dismiss the first amended complaint with prejudice.  In part this was because the facts did not support the negligence claims against the Trustee or City One.  Also, there was a prior reduction in price to account for mold and water damages to the property.

On September 5, 2019, the parties stipulated to "Dismiss Entire Action with Prejudice for Case No. 1:19-01064-GM in its entirety." (dkt. 21)  The dismissal order was entered on September 23, 2019 (dkt. 24).

As noted above, shortly thereafter Yavor filed a complaint solely against City One for negligence.  The Trustee asserts that since City One has indemnification claims against the Estate, the Trustee is the real party in interest and has removed the suit and will defend it.

The Motion to Dismiss

The complaint is barred by res judicata.  The initial adversary proceeding was dismissed with prejudice and the Trustee cannot be forced to defend the same action

again just because the Buyer has named a Doe defendant (City One).  A final judgment on the merits of an action precludes the parties or persons in privity with the parties from relitigating the same claim that was raised in the prior action. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).  A voluntary dismissal with prejudice operates as an adjudication on the merits, barring further action on the same claims.  *See Semtek International Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 505 (2001).

This new complaint involves the same parties or persons in privity with the same parties to the First Adversary Proceeding.  The Buyer is the Plaintiff in both, the First Adversary Proceeding named not only the Trustee, but Doe defendants and the Plaintiff knew that City One was one of those Doe defendants.  The claim of negligence asserted against City One arises out of the same transaction and occurrence – City One's conduct in changing the locks at the Property for the Trustee's benefit. Dismissals have res judicata effect as to Doe defendants.

Beyond that, City One owed no duty to the Plaintiff, who was the buyer. *John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006).  On its face the complaint shows that City One was sent to do the work and not hired or employed by the Buyer.  In fact, at that time the Trustee was the owner of the property since escrow had not yet closed. Closing occurred on or about January 29, 2019.  The complained-of action took place on about January 12.

The purchase agreement states that the Buyer purchased the property "as-is where-is."  Yavor accepted the property with full knowledge of the issues of the doors. She had plenty of time to inspect the property prior to closing, some two weeks after City One had performed its work.

Opposition

The prior complaint was dismissed without prejudice and the Plaintiff filed a first amended complaint.  During the course of "preliminary internal discovery," the Plaintiff discovered that the true tortfeasor was City One Locksmith and not the Trustee.  Also

that the Trustee was covered by immunity, so she must proceed against the actual tortfeasor.  Thus she decided to dismiss with prejudice as to the Trustee and proceed against City One.

The alleged indemnity agreement does not give jurisdiction to the court and the Plaintiff will be moving to remand.  The Trustee has no standing to bring this motion to dismiss.

Res judicata does not apply because the Trustee and City One are not the same party or privies.  City One was never a party to the prior lawsuit and the Trustee is not a party to this one.  The Trustee is attempting to transfer her trustee-immunity to City One.  The purported indemnity agreement is not signed and is not enforceable.  It is merely some pre-printed boilerplate language on a written invoice by City One.  The locksmith cannot unilaterally waive the indemnification requirement of a Trustee's signature.  *Lockheed Missiles & Space Co., v. Gilmore Industries, Inc.*, 135 Cal.App.3d 556.  *Paul Gonya v. Kenneth Stroud*, 2013 WL 5861489 (2013).

Under *Taylor v. Sturgell*, 553 U.S. 880 (2008), a non-party is subject to claims preclusion.  It holds that in general a person is not subject to an *in personam* ruling in a case in which "he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 893. There are six exceptions:

1. *A person agrees to be bound by the determination of the issues* – this did not happen.

2. *There are sufficient pre-existing substantive legal relations between the person to be bound and the party to the judgment* – here the only relationship is the indemnity agreement, which is unenforceable.

3. *The non-party is adequately represented by someone with the same interests who is a party to the suit*– there needs to be something in the record to show that the interests of the parties are aligned.  Here the interests of the Trustee and City One are in conflict in that the Trustee was holding the property for the benefit of the buyer (Plaintiff) and the locksmith damaged it.

4. *The non-party assumed control over the litigation* – this did not happen.

5. *The non-party is litigating through its proxy* – here City One is not a proxy to the Trustee.

6. *A specific statutory scheme forecloses future successive litigation by non-litigants* – there is no such statutory scheme.


  *Damjanovic v. Ambrose*, 951 F.2d 359 (9th Cir. 1992)(unpublished decision), which is cited by the Trustee, held that the subsequent claim was barred because the same party was being sued in both lawsuits.  Here City One and the Trustee are not the same party.  City One was not named in both lawsuits.  And they are not privies.  The Trustee's argument that City One should have been added as a Doe Defendant is not supported by the law.

  Even though escrow had not closed and there was no employment relationship between City One and the buyer, there is a duty to the buyer if there was foreseeability of harm to the buyer.  Whether this existed in this case is to be determined during the case itself and not at this stage.  Discovery will show whether City One's performance was negligent and caused damages to the door and whether City One actually foresaw the risk of harm to the buyer.

  The purchase of the property "as-is where-is" does not apply.  Buyer inspected the property in September 2018.  The tortious conduct occurred after that, during the escrow.  The buyer did not have control of the property and could not safeguard it.  This was a significant change to the property.


Trustee's Reply

  Because of the indemnification language in the invoice, the Trustee is the real party in interest and has standing to seek dismissal.  *Lockheed Missiles* deals with CA Labor Code §3864 and is limited to that context.  This is not a suit under the Labor Code.  Similarly the other cases cited by the Plaintiff do not apply.  In fact, if the Trustee

had not appeared, City One would likely have filed a third party complaint against the Trustee and the Trustee would have been required to defend the action.

City One was a known Doe defendant in the first adversary proceeding and is in privity with the Trustee. The dismissal of the first adversary proceeding with prejudice included a dismissal of all known Doe defendants, including City One.

The Trustee and City One have a relationship of principal and agent. This allows claim preclusion to apply. The indemnity liability is sufficient to allow legal privity for claims preclusion. *Lamphere Enterprises, Inc. v. Koorknob Enterprises, LLC*, 145 F.App'x 589, 5992 (9th Cir. 2005) (citing *Am. Safety Flight Sys., Inc. v. Garrett Corp.*, 528 F.2d 288, 289 n.1 (9th Cir. 1975).

*Damjanovic v. Ambrose*, 951 F.2d 359 (1991) (unpublished) affirmed dismissal of an action and sanctions when the plaintiff tried to name a Doe defendant in a subsequent action after dismissal of the prior-filed case.

For the case to go forward, the Plaintiff must show (and plead) that the Defendant owed a duty to the Plaintiff. This is not sufficiently alleged in the complaint. It is merely a legal conclusion, not based on pleaded factual allegations. The existence of a duty is a matter of law. The case must be prosecuted in the name of the real party in interest. *Krusi v. S.J. Amoroso Constr. Co.* 81 Cal. App. 4th 995, 1003 (2000), etc. concerned a suit against a contractor who had allegedly damaged real property prior to the transfer of ownership to the plaintiff. The Court of Appeal held that the negligence claim belonged to the party who had suffered the injury, which was the prior owner. Here the injury, if there was one, belongs to the Trustee since the Trustee was the owner of the property at the time of the alleged negligence.

This is an "as-is where-is" contract and that cannot be avoided by the Plaintiff. Plaintiff argues that the Trustee had a duty to protect the property during escrow., but the complaint alleges that City One has a duty to the Buyer/Plaintiff as the owner of the Property (¶19). It does not reveal that she did not own the property at the time of the alleged negligence. The purchase agreement (¶15) specifically states that the quitclaim

deed transfers title, which "shall be subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters which are of record or are disclosed to Buyer prior to Close of Escrow."  The Buyer's action lies against the Trustee as the former owner of the Property and the Buyer cannot plead sufficient claims against the Trustee.

Analysis and Proposed Ruling

      The initial issue to be resolved is whether the dismissal of the prior adversary proceeding with prejudice included the dismissal of all Doe defendants who were known to Yavor but not actually named in that adversary proceeding.  Here it is certain or at least highly likely that the Trustee had notified City One of the pending action.  But City One was not an actual party and could rely on the fact of the indemnification clause to sit back and let the Trustee resolve that adversary proceeding.  Unlike the *Damjanovic* case cited by the Trustee, City One was never actually named in another lawsuit.  There is no caselaw or statute that supports the theory that an unnamed person who would qualify as a Doe defendant and is known to the Plaintiff prior to dismissal of an initial lawsuit is then forever barred from being a named defendant in a later lawsuit for the same alleged negligent action.

      The indemnity agreement is probably enforceable between City One and the Trustee.  This is a matter of contact and both parties appear to agree to the validity of the contract.  This creates a few interesting issues given that this lawsuit is for simple negligence and the Trustee is immune from such claims.  If the Buyer were to prevail against City One for negligence and City One sues the Trustee, that is under contract and it is possible (probable?) that the Estate will be liable to City One for the tort damages for which the Estate is not directly liable to the Buyer.  It is also possible that if this case goes forward, City One will bring a third party complaint against the Trustee for indemnification.  That may or may not survive a motion to dismiss by the Trustee.  While all of this is interesting, the Court need not and will not decide it at this point in

time.  When such motions are brought or suits are filed, the issues will be ripe for decision.  Not now.

The issue of "as-is where-is" and the language of the quitclaim deed are factual matters to be determined in the lawsuit.  The inspection is alleged to have taken place in September 2018, months before the alleged damage to the property.  The alleged damage took place after the prior owners had vacated, so they (RESS and Cueva) are not liable for it.  The Trustee was the owner of the property at that point in time.  There will be factual issues of the knowledge of the Buyer prior to the close of escrow, the negotiations for reduced price, etc.  But that is part of the lawsuit and not to be determined in a motion to dismiss.

While the Trustee may be able to claim some form of privity due to the indemnification and perhaps even some form of principal/agent relationship and the dismissal of the first adversary proceeding is deemed to have been on the merits, those merits are personal to the Trustee by nature of her immunity from suit.  They do not deal with whether there was actual negligence by her agent.  An agent is not relieved from personal responsibility to the Plaintiff just because the principal cannot be held personally responsible for the agent's acts. [Please note that I am not deciding whether the timing of the alleged negligence (prior to escrow closing) relieves the agent of liability to the Buyer. This motion was not brought by City One.]

The complaint needs to be cleaned up a little bit.  Note the reference to the Trustee in paragraph 5.  The fact that the Trustee owned the property at the time of City One's work and that it is the Trustee (not the U.S. Marshal) who hired City One should be explicitly stated.  Please do better than a sloppy redrafting of the initial adversary complaint.

The motion to dismiss is granted only to allow a cleaned-up amended complaint as noted in the prior paragraph.  This is due by January 28.  City One and/or the Trustee will have until February 14 to respond.  The status conference will be held on March 24 at 10:00 a.m.

1

2          As to the request to remand, if a motion is filed it would likely be denied.  The

3    Trustee is inherently involved in this case and this Court has extensive knowledge of the

4    facts surrounding the sale.  The critical documents have all been filed here and are

5    easily accessible.  The relation of City One to the Trustee will likely lead to more

6    questions of the legal responsibilities of the Trustee.  All of these can best be decided

7    here.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24                                                  _____

25      Date: March 5, 2020                         Geraldine Mund
                                                     United States Bankruptcy Judge
26

27

28